IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JACK D. WINSTEAD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -versus- ) | Civil Action No.: 1:04CV00973 |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Jack D. Winstead, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act").[1] The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

**Procedural History**

Plaintiff filed his initial application for Disability Insurance Benefits on August 11, 2000, alleging an onset date of disability ("ODD") of January 20, 1996. Tr. 50. His date last insured (DLI) was determined to be June 30, 1997. See Tr. 32.

---

[1] The Social Security Disability Insurance Program was established by Title II of the Act, 49 Stat. 622 (codified at 42 U.S.C. § 401 et seq.).

The application was denied on February 8, 2001 (id.), and there is no showing in the record that this decision was appealed.

Plaintiff's second disability application, filed in September 2001, provided the same ODD. See Tr. 53. An employee of the state Disability Determination Services ("DDS") denied Plaintiff's application because he had previously filed a claim for the same period.[2] See Tr. 40. After Plaintiff requested reconsideration, the application was again denied, this time because he had insufficient evidence of his impairment as of his DLI. See Tr. 38-39.

Plaintiff next requested a hearing de novo before an Administrative Law Judge (ALJ). Tr. 49. Plaintiff appeared at the June 17, 2003, hearing with his attorney. See Tr. 207. By decision dated August 1, 2003, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Tr. 22. On January 16, 2004, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 10), thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

> 1.  The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through June 30, 1997, but not thereafter.

---

[2] "Clmt. alleges new & material evidence. The only source he provided when contacted 1st saw him 1999, 2 years after DLI of 6/30/97." Tr. 40.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).

7. On or before June 30, 1997, the date last insured, the claimant had the following residual functional capacity: medium.

8. The claimant's past relevant work as a metal framer did not require the performance of work related activities precluded by the above limitation(s) on and before June 30, 1997 (20 CFR § 404.1565).

9. The claimant's impairment did not prevent him from performing his past relevant work on and before June 30, 1997, the date he was last insured for purposes of disability.

10. The claimant was not under a "disability" as defined in the Social Security Act, at any time on or before June 30, 1997 (20 CFR § 404.1520(e)).

Tr. 27-28.

## Analysis

In his brief before the court, Plaintiff argues the Commissioner's findings are in error because the ALJ mistakenly found he was not disabled as of his DLI. The

3

Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

Scope of Review

The Act provides that, for "eligible"[3] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration, by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. 20 C.F.R. § 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v.

---

[3] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1).

Perales, 402 U.S. 389 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)); see also Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (the issue before the court is not whether the claimant is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law).

Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Pertinent Evidence Presented

As of the date of the ALJ's decision, Plaintiff was fifty-four years of age. Tr. 22. The ALJ found that he had a limited education and past relevant work as a metal framer. According to the ALJ, Plaintiff initially alleged disability due to osteoarthritis of the hips and left knee, and chronic obstructive pulmonary disease ("COPD").

The ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) since his alleged ODD. Tr. 23. He also determined that Plaintiff met the disability insured status requirements of the Act and continued to do so through his DLI. Further, the ALJ found the medical evidence to establish that Plaintiff suffered from the severe impairments of osteoarthritis of the bilateral hips, osteoarthritis of the left knee, and COPD, but that these impairments did not render Plaintiff disabled prior to his DLI.

Onset Date of Disability

A bedrock principle of Social Security law is that the ODD "is the first day an individual is disabled as defined in the Act and the regulations." Social Security Ruling (SSR) 83-20, Soc. Sec. Rep. Serv., Rulings 1983-1991 (West 1992), 49, 49. As quoted above, an individual is not deemed to be "disabled" until he is unable to engage in *any* SGA, *not* just his past relevant work. The burden is upon the claimant to prove his disability. See 42 U.S.C.A. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other

6

evidence of the existence thereof as the [Commissioner] may require."). Plaintiff has failed to carry this burden.

Plaintiff's only medical records prior to his DLI date from 1996. On June 6, he walked into the emergency room with complaints of leg pain and swelling. Tr. 190. An x-ray of his left knee showed mild medial osteoarthritic changes with marginal osteophyte formation. Tr. 193. Although this incident occurred several months after Plaintiff's purported ODD, he reported that he was self-employed, Tr. 190, and that he "continued to walk on [his knee] in the course of his work, as a construction worker," Tr. 195.

Plaintiff returned to the emergency room two months later, complaining of knee pain and swelling of one day's duration. See Tr. 199. Plaintiff again said that he was self-employed, and had a "commercial insurer." Tr. 197. He received prescriptions and a referral to an orthopedic surgeon, Tr. 200, but there is no indication that he followed up on the referral. On neither occasion did Plaintiff complain of hip pain nor did any caregiver comment on his breathing capacity. These are the only medical records in the transcript pre-dating Plaintiff's DLI.

The next medical record is not until March 1, 1999 – over three years past Plaintiff's alleged ODD and twenty months after his DLI. Moreover, this record does not concern Plaintiff's hips, knee, or COPD, but rather, was prompted by an injury to his thumb while "trying to put a tail pipe back on a car." Tr. 105. A review of systems revealed he had no other complaints.

7

Plaintiff reported that he was taking only Advil, an over-the-counter ("OTC") medication. The caregiver noted that he was "sitting comfortably." Id. Plaintiff again reported that he was self-employed: "Does private contract work for himself." Id. The next record of Plaintiff seeking medical care is not until July 24, 2000, see Tr. 153 – another sixteen months out from his purported ODD.

Not even medical records post-dating Plaintiff's DLI support his alleged ODD. In July 2000, Plaintiff consulted Dr. Scott Kelley, an orthopedist, about his left hip. He told the doctor that he had not worked "*for approximately the past year*" due to hip pain. Id. (emphasis added). The pain became "regular" in 1995 but had always been controlled with OTC medication.[4] Id. Not until the previous year (1999) did Plaintiff find his pain becoming less responsive to such treatment. And at this visit, three years after his DLI, Plaintiff described his pain as only "moderate." Id.

Dr. Kelley remarked that Plaintiff "uses no support." Id. As to his activities of daily living (ADLs), Plaintiff told the doctor that he could put on his shoes and socks, although with difficulty. He could walk stairs normally, with a bannister; stand without using his arms; pick up objects from the floor, with difficulty; and carry without limit. Dr. Kelley additionally noted that Plaintiff's systems were "all negative for any problems or complaints," including his respiratory system. Tr. 154. He observed that Plaintiff had a "slight" limp and his velocity was normal. Id.

---

[4] Plaintiff testified that his hip "started to bother" him only after his emergency room visits for his knee. Tr. 225.

The doctor's examination of Plaintiff revealed left hip ranges of motion that were only slightly different from the right hip. His knee exams were totally unremarkable. Both Plaintiff's abductor and quadricep muscle strengths were normal, as were his patellar and achilles reflexes. Tr. 155. Dr. Kelley concluded that Plaintiff was "becoming fairly limited in his activities because of his hip." Id. This comment does not suggest that Plaintiff had been for several years, or was even then, unable to engage in SGA.

According to his records, Plaintiff did not seek further medical care until almost a year later. See Tr. 138. He did, however, attend a consultative examination in connection with his disability application, on January 17, 2001. Dr. Miroslav Gavazov observed that Plaintiff breathed easily on room air and was without cyanosis. Tr. 109.

On examination, Plaintiff's left knee was unremarkable, and he had preserved flexion in both his hip (90° of 100°) and his knees (140° of 150°). Tr. 110, 113. He exhibited "mild" muscle atrophy on his left lower extremity, and its strength was "mildly decreased" to four of five. Although Plaintiff used a crutch, Dr. Gavazov noted that Plaintiff could both walk and keep his balance without the crutch. Plaintiff could not complete several maneuvers, but he appeared comfortable sitting.

Plaintiff saw Dr. Edwin Preston in July 2001, and told this doctor that his left hip pain began in 1997. See Tr. 138. Even at that time, Plaintiff said that he used neither medication nor "support." Id. He reported no knee problems, and an

9

examination of his knee was unremarkable. Tr. 138-39.  Although Plaintiff had several doctors' visits in July, August, and September, he had none at all through the rest of the year and 2002.

In March 2003, Plaintiff was admitted to the hospital for a "flare" of COPD. See Tr. 181.  Prior to this admission, there is no record of Plaintiff seeking treatment for respiratory difficulties.  His chart shows that Plaintiff did not need assistance with rising or stairs.  Tr. 180.  He had onset of left hip pain when walking, and that pain now was only a six (presumably, on a ten-point scale).

There is no indication he was taking pain medication. See Tr. 181.  In answer to the query, "What have you done in the past to manage your pain," Plaintiff answered, "Ibuprofen."  Tr. 180.  He added that such treatment was "successful." Id.  Further, pain did not impact his ADLs.  This recital plainly shows that substantial evidence supports the ALJ's determination that Plaintiff was not disabled as of his DLI.

Plaintiff contends that a letter solicited from a physician's assistant supports his claim that he was disabled as of his DLI.  He quotes John Lohnes as saying, "the condition [Plaintiff's hip osteoarthritis] was likely present for several years prior to [July 2000], given the advanced degree of disease observed.  I would also agree that this condition resulted in significant disability prior to 2000."  Tr. 123.

There are several problems with this opinion, however, as the ALJ adequately explained:

> Mr. Lohnes acknowledged that he had no way of knowing without prior records or personal contact with the claimant prior to 2000 exactly how long his disability had existed, and he is a physician's assistant not a medical doctor.[5] In fact, as is noted above, the claimant indicated to Dr. Kelley in July 2000 that until 1999 his hip pain had been controlled with [OTC] analgesics. Further, x-rays of the left hip at that time showed only moderate degenerative changes, and the claimant walked without an assistive device with only slight limp.

Tr. 24-25 (footnote added; citation omitted).

Plaintiff next cites to a letter from Dr. Kelley dated June 25, 2003, arguing that the doctor "concurs" with Lohnes's opinion. But as the ALJ points out, Dr. Kelley did *not* concur with Lohnes's approval of Plaintiff's ODD but, rather, "with the findings of the follow-up care that [Plaintiff] has received" from Lohnes. Tr. 152, cited at Tr. 24, 25.

Dr. Kelley's letter also misrepresents the findings from his July 2000 examination.[6] Dr. Kelley's letter says, "It was my conclusion during that examination that without surgery to repair his severe hip arthritis, [Plaintiff] would be totally disabled." Tr. 152. In fact, on July 24, 2000, Dr. Kelley opined: "[Plaintiff] will *likely come* to a [left total hip replacement] *over the next several years*. He is *becoming* fairly limited in his activities because of his hip. *Before it comes to this* we would like

---

[5] "We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s)." 20 C.F.R. § 404.1513(a). A physician's assistant is not an "acceptable medical source." See id. § 404.1513(d)(1). Although the opinion of a physician's assistant *may* be used as evidence to show the severity of a claimant's impairment, id., it will be accorded much less weight. See Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

[6] This is the only record that Dr. Kelley ever treated Plaintiff.

11

to try a [left] hip aspiration/injection to see if that buys him some time." Tr. 155 (emphases added). Clearly, this is *not* a statement that Plaintiff was disabled even as of July 2000, much less three years earlier.

Lastly, Plaintiff attempts to rely on exam findings from February *2004* – fully eight years past his alleged ODD and close to seven years after his DLI. Based on these belated findings, Dr. Theodore Pitts concluded that Plaintiff "had well reached the level of severe disability by June 30, 1997." Tr. 7.

There are many problems with this opinion, but a discussion of one will suffice to dismiss it. There is no indication that the Appeals Council considered Dr. Pitts's submissions,[7] so in order for this court to remand on this basis, they must satisfy the criteria of Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985): (1) the evidence must be relevant to the determination of disability at the time the application was first filed; (2) the evidence must be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her; (3) there must be good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant must make at

---

[7] Plaintiff argues in his Reply that the Appeals Council incorporated Dr. Pitts's submissions into the record after its denial of review on January 16, 2004. There is no showing that this is the case. Plaintiff adds that the Appeals Council had this evidence "when on October 14, 2004 [Plaintiff's] request for reconsideration of the January 16, 2004 decision was denied." Pl.'s Reply at 1-2. But the Appeals Council did not have any authority to "reconsider" its denial, and its October 14, 2004, letter simply responded to Plaintiff's request for an extension of time to file his civil action. See Tr. 5. The letter contains no mention of a "reconsideration."

12

least a general showing of the nature of the new evidence to the reviewing court. See also 42 U.S.C. § 405(g).

Clearly, this "evidence" is not relevant to the determination of disability at the time Plaintiff filed his application – that time, for the purpose of this case, being his DLI – as it post-dates that time by almost seven years. Moreover, Dr. Pitts's opinion would not likely have changed the ALJ's decision as it is *not* the opinion of a "treating physician" (Dr. Pitts saw Plaintiff on only one occasion); as to Plaintiff's condition at the time of his DLI, it is not supported by the record; and it is an opinion on an administrative determination reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1); see also SSR 61 Fed. Reg. 34471, 34472 (stating that giving controlling weight to an opinion of legal disability by a treating source "would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled"). Accordingly, there is no reason to remand for consideration of Dr. Pitts's letter and examination record.

Neither the ALJ nor this court disagrees with Plaintiff that his impairments "likely existed for several years prior to" his DLI. Pl.'s Reply at 2-3. But the ALJ and the court both agree that there is insufficient evidence to show that Plaintiff's impairments were *disabling* as of his DLI.

**Conclusion and Recommendation**

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and the correct legal principles were applied. Therefore, IT IS

13

RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED. To this extent, Plaintiff's motion for summary judgment (Pleading no. 8) seeking a reversal of the Commissioner's decision should be DENIED, Defendant's motion for judgment on the pleadings (Pleading no. 10) should be GRANTED, and this action should be DISMISSED with prejudice.

                                                                 WALLACE W. DIXON
                                                                 United States Magistrate Judge

October 4, 2005